INSULAR MERCANTILE Co., demandante y apelada, *v.* FRANCISCO CRESPO ESCALERA, demandado y apelante.

Núm. 7984.—*Sometido:* Diciembre 6, 1939. *Resuelto:* Julio 19, 1940.

*Luis Mercader,* abogado del apelante; *A. Torres Braschi,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Desde el año 1922 Francisco Crespo Escalera era dueño de varias parcelas de terreno en el Municipio de Ciales, cerca de la línea divisoria entre Ciales y Orocovis, pueblo este último que anteriormente se conocía con el nombre de Barros.

Desde el año 1887 estas propiedades—o por lo menos la que ahora nos concierne—han sido consideradas generalmente como que están dentro del Municipio de Ciales, y desde el 1922—de no ser desde 1887—las contribuciones de las mis-

mas han sido pagadas en Ciales. Asumiremos que con anterioridad al 1887 eran generalmente consideradas como que estaban dentro del Municipio de Barros y que así fueron inscritas en el Registro de la Propiedad de Ponce.

Crespo hipotecó dos de estas fincas a Ernesto Fernando Schlüter. Se les describió en la hipoteca como radicadas en el Municipio de Barros. Schlüter inició un procedimiento ejecutivo sumario ante la Corte de Distrito de Ponce y fué el único postor en la subasta. Para una de las fincas, una parcela de 122 cuerdas, ofreció $300; para la otra, parcela de 81 cuerdas, $250. Estas dos sumas fueron acreditadas a Crespo. No hubo traspaso de dinero alguno. Más tarde, a fin de cubrir la *deficiencia* Schlüter embargó otras propiedades pertenecientes a Crespo. Finalmente otorgó una escritura que pretendía traspasar las 122 cuerdas, las 81 cuerdas y cinco otras propiedades, junto a la cesión de dos hipotecas, a la corporación Insular Mercantile Company, en la cual él estaba empleado para aquel entonces como administrador.

La corporación pagó $300, importe de la oferta hecha por Schlüter en la subasta para las 122 cuerdas, y $250, importe de la oferta hecha por Schlüter en la subasta para las 81 cuerdas. La suma pagada por cada una de estas fincas y por cada una de las hipotecas era mucho menos del valor material de las propiedades, en tanto en cuanto puede obtenerse una idea de tal valor de los hechos expuestos en la escritura notarial. La suma pagada por todo el terreno y las hipotecas fué tan sólo $1,500.

La Insular Mercantile Company instó el presente recurso de desahucio ante la Corte de Distrito de Ponce. Alegó que la parcela de 122 cuerdas que se describe en la demanda estaba en el barrio Damián, del Municipio de Orocovis, dentro del distrito judicial de Ponce. También alegó que Crespo poseía en precario.

En su contestación el demandado sostuvo (por vía de excepción previa y como defensa) falta de jurisdicción porque la finca estaba de hecho en el Municipio de Ciales y no

en Orocovis, conocido anteriormente por Barros. Las contribuciones se pagaban en Ciales. Si en el registro de la propiedad aparecía como que estaba en Barros (Orocovis), eso se debía, según él, al hecho de que el actual territorio de Ciales había formado parte en una época del Municipio de Barros, del cual fué segregado y constituyó un municipio distinto.

La corte de distrito (hablando del procedimiento de desahucio) resolvió que ésa no era una cuestión jurisdiccional sino una de competencia que había sido renunciada al dejar el demandado de solicitar el traslado. *Sosa* v. *Manzano*, 36 D.P.R. 731. El apelante impugna la corrección del fallo emitido en el caso de Sosa, mas no ofrece razón satisfactoria alguna para que revoquemos ese caso al presente.

La demandante ofreció como prueba un recibo de contribuciones para el año 1936-37, en el que se describía la propiedad como ubicada en el barrio Pozas, Municipio de Ciales. También ofreció una carta fechada el 3 de marzo de 1938, dirigida a Crespo en Ciales, en la que se le decía que la demandante tenía un comprador en perspectiva para "la finca de 122 cuerdas en el barrio Pozas de Ciales." El demandado solicitó la desestimación del recurso fundado en que la corte de distrito carecía de jurisdicción en el procedimiento de desahucio toda vez que de la propia prueba de la demandante se desprendía que la finca estaba en Ciales. La corte declaró sin lugar esta moción y el demandado se anotó una excepción.

Si, conforme la corte ya había resuelto, la cuestión no era una de jurisdicción sino de competencia—el hecho de que la demandante pagara contribuciones sobre la propiedad como ubicada en el Municipio de Ciales y de que se hubiera referido a ella como la propiedad de 122 cuerdas en el barrio Pozas de Ciales, no convirtió la cuestión de competencia en una de jurisdicción.

■■ En su contestación el demandado sostiene:

Después de la subasta, Schlüter convino con el demandado en venderla, como la vendió, y se la dejó en posesión, a cambio de la liquidación hecha entre ambos del crédito hipotecario e intereses. Más luego Schlüter, para burlar ese convenio, traspasó simuladamente la finca a la corporación demandante, de la cual él es director o parte interesada. Esto lo hizo con el solo objeto de hacer aparecer a dicha demandante como tercero, siendo la realidad que la corporación demandante y dicho Schlüter son la misma cosa. El demandado está en posesión de la finca a virtud de ese convenio con Schlüter y no precariamente como alega éste por su testaferro, la sediciente corporación demandante.

De la transcripción taquigráfica del testimonio de Schlüter tomamos el siguiente extracto:

"¿Y después de ejecutadas y adjudicadas esas fincas a usted, tenía usted convenio alguno con el señor Crespo?

"Le di al señor Crespo seis meses para que hiciera lo posible para volverme a pagar el importe, según una carta que está ahí, y a eso, cuando se venció, cuando se venció el término, me contestó que no podía conseguir el dinero.

"Juez: ¿Él se quedó viviendo en la finca bajo ese convenio que usted dice?

"Testigo: Señor...

"Juez: Bajo ese convenio que usted dice.
"Seis meses era el convenio.

"Lic. Torres: ¿En esos seis meses él quedó de buscar el dinero?
"Pagar lo que debía.

"Lic. Torres: ¿Y en esa forma, retener la propiedad?
"Pero han pasado seis meses muchas veces y él no lo ha pagado."

El resto de la declaración de Schlüter fué, en síntesis, así:

La hipoteca fué otorgada sobre dos fincas radicadas, según la escritura, en el barrio Damián, de Orocovis, jurisdicción de Ponce. Después de la subasta se halló que había una deficiencia. El testigo nunca había visto las fincas y no sabía su valor. Debido a la deficiencia el testigo se vió precisado a embargar otras propiedades que no se habían vendido aún. La correspondencia se refería a la deficiencia.

Habían transcurrido seis años desde que expiró el período de seis meses. Una vez transcurrido ese período el testigo en varias ocasiones hizo diligencias. Crespo luego le escribió que iba a conseguir el dinero de la A.A.A. y del gobierno—de la rehabilitación; y el testigo había estado esperando que él consiguiera el dinero—no porque hubiese convenio alguno. Después Crespo le dijo que el Sr. Morán le iba a dar el dinero. Morán se embarcó para Europa y no hubo nada. Crespo todavía está en posesión de la finca.

En la repregunta:

El testigo estaba empleado por la corporación demandante como administrador. No tenía acciones. No era oficial ni director. Según la hipoteca la finca de 122 cuerdas se halla en el Barrio Damián de Orocovis. Está inscrita en el Registro de la Propiedad de Ponce. El testigo nunca ha visto la finca. En una ocasión le escribió a Crespo preguntándole dónde se pagaban las contribuciones, porque el colector de Barros le había dicho que la finca no aparecía en Orocovis y él deseaba pagar las contribuciones. La propiedad apareció en el municipio de Ciales. El testigo hacía su remesa a Ciales—pagaba las contribuciones en Ciales. El recibo de contribuciones era de Ciales.

Crespo declaró en parte así:

Alegaba ser dueño de la finca en controversia por ser su propiedad. Mientras se hallaba enfermo, Schlüter vendió la finca en pública subasta por el saldo que le debía de hipoteca. Más tarde se convino en que le cedería al testigo las fincas porque siempre quería aparecer como un hombre que no trataba de hacer daño. Eso fué en 1932. En 1934 el testigo estuvo muy mal del cerebro. Hubo un ciclón en 1928 y otro en 1932. Él le venía pagando bien. Le pagó ocho o diez mil dólares y la deuda ascendía a doce mil dólares. Remató las fincas por un pagaré vencido. Después que el testigo se puso bueno en 1934 le dijo a Schlüter que iba a impugnar la venta; que dos fincas que valen $10,000 no podían ser vendidas por $2,000. Schlüter le contestó al testigo: "Nosotros lo arreglamos, la finca yo no se la quito." Estuvo conforme. Se allanó a que el testigo estuviera en la finca. La prueba es que todavía se hallaba en posesión. Se convino en que el testigo pagaría.

En 1934 el declarante fué con don Pepe Morán, quien había prometido prestarle el dinero—fué a casa del Sr. Schlüter y estuvo tratando y tratando. "Yo deseo esa cuenta para pagársela, que viene el Sr. Morán para darme el dinero en el banco." El testigo no pagó porque no le liquidaron la cuenta. Después Morán embarcó y cuando regresó fueron a la casa de Schlüter para que le liquidara la cuenta. El convenio fué que le devolvería la finca pagando las cuentas. El testigo aún estaba en posesión de la finca. Ésta radicaba en el municipio de Ciales.

Hubo un litigio entre los dos municipios. Antes la finca estaba en Barros. Ésa y otras más quedaban en el municipio de Barros. La división entre Barros y Ciales se hizo en 1887. Se hizo un deslinde en 1887... Desde 1887 la finca está en el municipio de Ciales. El testigo compró la finca en el 1920 ó 1922. Ha pagado las contribuciones en Ciales. Todo el mundo la ha tenido como que está en Ciales, no hay duda de eso. Todavía estaba en la finca.

Se convino en que otros tres testigos del demandado, al ser llamados, declararían lo mismo que Crespo respecto a la línea divisoria entre los dos municipios.

En la repregunta Crespo declaró:

Que tenía 62 años de edad; el convenio con Schlüter se llegó a realizar. Fué tres o cuatro veces a pagarle. Schlüter no puede negar que el testigo fué siete u ocho veces a pagarle. No le pagó. Desde el remate de la finca permaneció viviendo allí.

Morán no estuvo a visitar a Schlüter. Ultimamente don Ramón fué a verle. Anteriormente quien visitó a Schlüter cuatro o cinco veces fué el testigo. Morán se quedó en San Juan. Le iba a dar el dinero al testigo. Ultimamente Morán visitó a Schlüter pero "don Pepe Morán tenía que hablar conmigo." Él era "el pagano que me iba a dar el dinero del banco." Recientemente Morán, después que vino de España, visitó a Schlüter. Don Pepe Morán fué a darle el dinero en el 1934. Fué tres, cuatro o cinco veces que el testigo estuvo esperando que Schlüter liquidara para que Morán le diera el dinero. Después fué Morán por el 1936. "Sería cuando se fué para España Ramón." Después cuando volvió de España fué Morán a darle el dinero. El testigo fué donde Schlüter a pagarle y a arreglar con él la cuenta. No la han arreglado. El testigo cogió a ese amigo para que le diera el dinero. Desde el 1934 había estado detrás de Schlüter para que le liquidara la cuenta. Fué dos o tres veces para que le liquidara la cuenta. No pagó porque nunca lle-

garon a un acuerdo. Schlüter no le quiso liquidar. Por eso no pagó. No demandó en una acción de rendición de cuentas porque estábamos así esperando mientras se hacía eso.'' Por eso el testigo no demandó a Schlüter. Entonces vino Morán ''y fuimos tres o cuatro veces.'' Una sola vez, cuando Morán estaba en España, el testigo escribió a Schlüter, manifestándole que no podía conseguir el dinero. Morán embarcó en un asunto de familia. Era claro que el testigo no podía pagar hasta que él regresara. Tan pronto vino Morán el declarante fué con Morán, cuando vino de España.

En este punto la transcripción taquigráfica lee:

''Sr. Schlüter: Este año; antes, no.

''Testigo: ¿Antes no? Usted no ha querido liquidar esas cuentas varias veces.

''Lic. Torres: ¿Por qué no lo consignó en corte?

''Porque yo no podía disponer hasta que no estuviera la escritura para pasar a los otros. ¿Usted cree que así se consiguen los cuartos?

La demandante no ofreció prueba de refutación.

El juez de distrito resolvió que—conforme demostraban las cartas admitidas como prueba y copiadas en su relación del caso y opinión—no hubo ningún contrato de compraventa ni de ninguna otra clase en relación con la referida finca, ''entre Schlüter, la Insular Mercantile Co. y Crespo.'' Si con esto el juez de distrito quiso decir que no hubo acuerdo alguno entre Schlüter y Crespo, su conclusión, a nuestro juicio, fué contraria a la prueba.

Las cartas de referencia son: primera, carta de Schlüter a Crespo fechada agosto 11, 1932; segunda, respuesta de Crespo fechada el 15 de agosto, 1932; tercera, carta de Schlüter a Crespo de septiembre 14, 1933; cuarta, contestación de Crespo de septiembre 19, 1933; quinta, carta de la Insular Mercantile Co. a Crespo de noviembre 30, 1937; y sexta, respuesta de Crespo de diciembre 8, 1937.

En el primer párrafo de su carta de agosto 11, 1932, Schlüter informó a Crespo que el día anterior él había adquirido la finca por adjudicación, y solicitó de Crespo que en lo sucesivo se abstuviera de realizar acto alguno de posesión

o de dominio. En el segundo párrafo de dicha carta le decía a Crespo que si estaba interesado en las fincas mencionadas, él (Schlüter) estaba dispuesto a aceptar el pago hasta donde alcanzara el importe de las deudas más los gastos originados en el procedimiento, puesto que el único interés que él tenía en el asunto era cobrar su dinero. Evidentemente esta oferta voluntaria implicaba la promesa de retrasmitirle la propiedad al pagársele la deuda y reembolsársele los gastos incurridos. No se fijó límite de tiempo alguno. En su respuesta Crespo manifestó: que la finca adjudicada estaba junta con el resto de la finca en cercados; que hacía dos meses o más que no iba allá por estar mal de salud; que tan pronto mejorara, tan pronto pudiera salir, vería a ver qué podían hacer; que vendría a San Juan a ver a Schlüter. Si esto no equivalió a una aceptación tentativa de la oferta de Schlüter —sujeta desde luego a que Crespo pudiera levantar fondos— ello se convirtió en tal aceptación mediante hechos posteriores que se detallan en el testimonio incontrovertido de Crespo y que están corroborados en sus faces principales por las propias manifestaciones y admisión de Schlüter.

En su carta de septiembre 14, 1933, Schlüter dijo: que el término de seis meses que le dió a Crespo estaba próximo a vencer; que aparentemente Crespo no ha hecho nada durante el transcurso de ese tiempo, o por lo menos no les ha avisado nada; que Schlüter tenía que pagar intereses por su deuda al banco y éste le exigía la liquidación. La carta terminaba con la súplica de que Crespo les indicara lo que él pudiera hacer definitivamente, para Schlüter actuar de acuerdo con las instrucciones que tenía del banco y para ver si podían armonizar algo práctico. En su contestación Crespo manifestó: que había hecho todas las diligencias por conseguirles su dinero sin que hasta la fecha hubiera podido hacer nada práctico; que no se consigue dinero por ninguna parte; que estaba pendiente de la rehabilitación agrícola para ver si con ese grupo de fincas de Pozas, si Schlüter no tenía inconveniente, podía conseguir su dinero total. Que si

Schlüter le hacía el favor, eso no podría tardar ya mucho, era la única forma de conseguirlo; y que confiaba en que el banco esperaría.

La manifestación de Schlüter de que esta correspondencia se refería a la "deficiencia" no produce impresión. En realidad, ninguna de las cartas se refiere a la "deficiencia." Evidentemente la "deuda" a que se refería el segundo párrafo de la primera carta, no era la "deficiencia."

Schlüter no quiso decir que, toda vez que el único interés que él tenía en el asunto era cobrar su dinero, él estaría dispuesto a aceptar el pago de la "deficiencia" más los gastos del procedimiento ejecutivo—de estar Crespo interesado en la "propiedad." No es probable que Crespo hubiera estado interesado en la "propiedad" de haber él entendido que Schlüter quería decir que estaría dispuesto a aceptar el pago de la "deficiencia," más los gastos del procedimiento ejecutivo y al mismo tiempo quedarse con la "finca." En su carta de septiembre 19, 1933, difícilmente Crespo hubiera expresado la esperanza de que tal vez le sería posible hipotecar "el grupo de fincas de Pozas," obteniendo con ello el importe total de la deuda, si hubiera entendido que Schlüter quería significar, en su carta de un año antes, que si Crespo estaba interesado en la finca que Schlüter había adquirido en la subasta, Schlüter estaría dispuesto a aceptar el pago de la "deficiencia" y a retener la propiedad.

La indicación de que Crespo perdió su opción seis años antes de iniciarse el procedimiento de desahucio al expirar el término de seis meses mencionado en la carta de Schlüter de septiembre 14 de 1933, es demasiado tardía. Cuando las partes que celebran un acuerdo, por sus actos, conducta y consentimiento tácito han extendido por más de seis años un período de seis meses, y una de ellas, tenedora de una opción, ha tratado de tiempo en tiempo durante esos seis años de ejercitar su derecho de opción y de cumplir su parte del contrato y ha sido impedida en su realización por tácti-

cas evasivas y dilatorias de la otra, entonces esta última no puede invocar con éxito el límite de seis meses para privar a la tenedora de la opción de los derechos que tenía bajo el contrato.

Si Schlüter hubiera dicho a Crespo en 1933 ó 1934 que no le transmitiría de nuevo la propiedad al pagar Crespo la deuda, porque éste no había ejercitado su derecho de opción dentro del término de seis meses, no es probable que Crespo hubiera insistido en sus esfuerzos de obtener de Schlüter una relación de la suma necesaria para redimir la propiedad.

Si conforme Crespo sostiene, Schlüter es el verdadero demandante, no puede permitirse ahora que Schlüter diga que el convenio celebrado por él con Crespo expiró al finalizar el período de seis meses, seis años antes del traspaso ostensible de la propiedad y de la iniciación del presente recurso.

Las cartas de noviembre 30, 1937, y diciembre 8, 1937, leen así:

"Sr. Francisco Crespo, Ciales, Puerto Rico.

"Muy señor nuestro:

"Habiendo adquirido del Sr. Schlüter una finca que usted la había hipotecado, deseamos pedirle se sirva indicarnos quién está en frente de dicha finca actualmente y debemos notificarle que estamos próximos a cerrar una operación con dicha finca. De estar usted interesado en la misma esperamos sus avisos, pero de todos modos necesitamos que nos informe el que tiene usted encargado en ella.

"Esperamos vernos favorecidos por la cortesía de su contestación y nos suscribimos,

"Atentamente, INSULAR MERCANTILE CO."

"Insular Mercantile Co., San Juan.

"Muy señores míos:

"Recibí su atenta de noviembre 30 la que no contesté a su debido tiempo por tener que estar en el campo atendiendo a mis quehaceres.

"Respecto a la finca que ustedes hacen referencia está en mi poder y la atiendo conjuntamente con otro que tengo allí.

"Respecto a la compra siempre que sea razonable tal vez podamos entendernos; siempre que sea importes (sic) y plazos que convengamos.

"En espera de su contesta quedo a sus órdenes atentamente, (Fdo.) Francisco Crespo."

La carta de noviembre 30, 1937, fué aparentemente la primera información recibida por Crespo respecto a la supuesta enajenación de julio 1937. En ella no se hacía mención del hecho de que Schlüter había traspasado a la Insular Mercantile Co. la parcela de 81 cuerdas. Hasta el momento del juicio Crespo pareció haber entendido que Schlüter había vendido esta finca a una muchacha de Orocovis, a quien Crespo, luego de negarse a entregar la posesión, describió como una pantera humana. Crespo también declaró que no había podido averiguar por Schlüter si éste había vendido o no las 81 cuerdas. Si, conforme Crespo creyó, la Insular Mercantile Co. era tan sólo otro nombre para la persona de Schlüter, no había razón por la cual, al recibir la carta de la corporación, su primer paso debió haber sido tratar de obtener de la corporación lo que no había podido conseguir de Schlüter. Tomando todo en consideración, su proceder cauteloso y su respuesta poco comprometedora a dicha carta fué tan discreta como lo que cualquiera otra persona hubiera podido haber manifestado no estando aconsejada por letrado. Sea ello como fuere, tal respuesta no puede ser interpretada como una renuncia o abandono del convenio que había celebrado con Schlüter. No contradice ni desacredita su testimonio.

Si Crespo, luego de aceptar la oferta de Schlüter, a través de sus repetidas e infructuosas tentativas de realizar su parte del contrato no era el dueño en equidad de la propiedad, él tenía por lo menos derecho a permanecer en posesión hasta que se liquidaran las cuentas y se traspasara la propiedad, o dejara de cumplir su parte del contrato después de habérsele dado una oportunidad razonable para ello. De todos modos, él no era ni un arrendatario ni un poseeder en

precario. Aunque su alegación, incluyendo la contención de que la Insular Mercantile Co. no era en realidad otra cosa que la persona de Schlüter, sea considerada como que no ha sido del todo establecida, ella está por lo menos sostenida por prueba suficiente para hacer caer el caso dentro de la regla que dispone que cuando está envuelto un conflicto de título u otras cuestiones similares el procedimiento de desahucio no puede prosperar.

El caso tiene otro aspecto que quizá es más serio. Si, según el testimonio de Crespo demuestra o tiende a demostrar, las fincas hipotecadas se hallaban en realidad, al momento de otorgarse la hipoteca y posteriormente, en el Municipio de Ciales, entonces la corte de distrito carecía de jurisdicción en el procedimiento ejecutivo, a menos que el hecho de que las fincas estuvieran inscritas en el Registro de la Propiedad de Ponce y se describan en la hipoteca como que estaban ubicadas en el Municipio de Barros, hoy Orocovis, sea suficiente para colocar el caso fuera de la regla general y hacerlo caer dentro de una excepción a esa regla. Que el caso no cae dentro de la regla general no es de por sí evidente en manera alguna. La alegación de Crespo al efecto de que continuaba siendo dueño debido a la nulidad absoluta del procedimiento ejecutivo y de los traspasos subsiguientes, y su contención de que la Insular Mercantile Co. no era un tercero de buena fe, merece seria consideración y las cuestiones envueltas pueden ser resueltas mejor en un pleito ordinario. Una detenida investigación de la cuestión relativa a si la Insular Mercantile Co. era o no un tercero de buena fe—echando a un lado por el momento todas las otras cuestiones envueltas—abarcaría un campo mucho más amplio del que se acostumbra o es práctico o propio en procedimientos sumarios de desahucio.

*La sentencia apelada debe ser revocada y declararse sin lugar la demanda.*

El Juez Asociado Sr. De Jesús no intervino.